McINNIS, Judge.
This is a suit wherein plaintiff alleges that defendants are indebted to him in the sum of $3210.00 on account of personal injury and damage to his automobile, which occurred on February 3, 1944. We have carefully reviewed the record in this case, in which the district judge has favored us with a written opinion, and, being of the opinion that he has correctly resolved the facts and the law, we adopt his opinion as our own. The opinion of the district judge follows:
“Plaintiff sues the defendant, M. A. Til-bury, and defendant’s insurer, Maryland Casualty Company, for damages for injuries to plaintiff’s automobile and person alleged to have been sustained in a collision with a truck belonging to Tilbury and operated negligently by his employed negro driver acting within the scope of his employment.
“The defense is a denial of negligence and, in the alternative, contributory negligence on the part of plaintiff barring his recovery. There is no reconventional demand for the damages sustained by defendant’s truck.
“The collision occurred at the intersection of Creswell and Jordan Streets, in Shreveport, about 4:30 P. M. on February 3, 1944. Creswell runs North and South, *839 Jordan East and West. A traffic light, with the customary green, amber and red lights, hangs over the center of the intersection. Plaintiff was en route from his home to his down-town place of business, traveling North on Creswell Street. He was alone and driving his Oldsmobile Sedan. Defendant Tilbury’s colored driver, M. L. Thomas, was driving a Ford panel light delivery truck West on Jordan Street. Seated in the truck with the driver was Mr. R. F. Simpson, a meat cutter employed by Mr. Tilbury in his market.
“The only witnesses to the collision who testified were plaintiff and Mr. Simpson. Thomas, the colored driver, did not testify-
“Plaintiff testified that he was driving about 20 miles per hour on his own, or the right side of the street; that he entered the intersection on the green light and that he had almost completed the crossing of Jordan Street when defendant’s truck crashed into the right side of his car which he brought to a stop some twenty feet beyond, or North, of the intersection, on Creswell Street. He did not see the truck before the collision.
“On the other hand, Mr. Simpson testified that, as the truck approached the intersection, the green light was on for traffic on Jordan; that Thomas, the driver, was driving slowly, about 20 miles per hour and that, as they were entering, or about to enter, the intersection, he (Simpson) saw plaintiff’s car for the first time, already in the intersection traveling about 40 miles per hour. He says the negro truck driver saw plaintiff’s car about the same time he did and then applied his brakes and cut to the right, the left front wheel of the truck striking the right front of plaintiff’s car throwing the left rear of the truck around into the right side of the car. He was unable to fix the exact point in the intersection where the impact occurred, but testified that both vehicles stopped clear, or North, of the intersection. Mr. Simpson testified that, although he did not see plaintiff’s car until after it had entered the intersection, ‘there was no reason why he could not have seen him sooner.’
“We think Mr. Simpson’s testimony corroborates plaintiff’s version of the matter, except as to whom the green light favored and the speed of plaintiff’s car. We think the physical facts are with plaintiff, also. They support the testimony that the impact occurred in the Northeast corner of the intersection after plaintiff had practically crossed the intersection and we think it not probable, if plaintiff was driving at the excessive speed of 40 miles per hour, that plaintiff could have brought his car to a stop within 20 feet, or “a few yards,” beyond the intersection. We think defendant’s driver was negligent in failing to keep a proper lookout and observe plaintiff’s car. The witness Simpson says he thinks Thomas, the driver, saw plaintiff about the same time he did, which was after plaintiff entered the intersection, although there was no reason why he (Simpson) could not have seen him before that. A fortiori Thomas, the driver, being on the left side of the truck, should have seen plaintiff. We think, too, that defendant’s truck driver had not reached the intersection even when he finally saw plaintiff and was negligent in failing to bring his vehicle to a stop at a time when it was apparent, or should have been, that plaintiff would cross ahead of him. And this negligence, we think, was the proximate cause of the accident entitling plaintiff to recover, unless plaintiff was guilty of negligence contributing, as a proximate cause, to the accident.
“Defendant bears the burden of proving plaintiff’s contributory negligence and we are of the opinion that he has not done so. As we have already indicated, Simpson’s testimony that plaintiff was driving 40 miles per hour is contradicted by plaintiff and, we think, by the physical facts. Besides, according to his own testimony, Simpson saw plaintiff, at most, only an instant before the crash and had no adequate opportunity to estimate his speed with any accuracy. Likewise, defendant’s contention that Thomas, the truck driver, had the green light is not sufficiently proved, in view of the testimony of plaintiff that he (plaintiff) had the green light, and the fact that plaintiff’s testimony on the other essential facts consists with the proven physical facts and is otherwise corroborated.
“It is our conclusion that defendant is liable to plaintiff for his damages.
“It is stipulated that the damages to plaintiff’s car amount to $436.76.
“Plaintiff claims $250.00 for ‘doctor bill and medical expenses, past, present and future.’ Other than a payment *840 to his doctor, Dr. Isaac F. Hawkins, of a bill for $25.00, plaintiff offered no proof of this item.
“He claims $1,000.00 for ‘loss of earning capacity and loss of earnings.’ The evidence shows that after' the accident, plaintiff was able to go on to his place of business and did not miss a day therefrom, although he says he ‘didn’t feel right’ and ‘stayed a little longer at home.’ There is no proof of diminution of earnings from his saloon which he owns and operates. This item must, therefore, be . disallowed.
“Finally, he claims $1500.00 for ‘personal injuries; contusion, abrasion and shock to bones, muscles, ligaments and the entire area of (his) left arm and left shoulder, causing arthritis to the joints of this region; severe shock, pain and suffering, mental anguish and past, present and future suffering.’ Plaintiff did not visit a doctor until the next day after the accident. A written statement of Dr. Hawkins, admitted without objection in lieu of his testimony, and dated March 31, 1944, is to the effect that plaintiff came to his office on February 4th, stating that he had been in an automobile accident the day before, hurting his left shoulder, side of his neck and arm and complained of tenderness over his left shoulder joint, some pain radiating down his left arm, with soreness in his neck. The doctor found no broken bones, but did find contusion of the muscles, ligaments and nerves of the left shoulder. For treatment, physiotherapy was given him over a period of time during which he showed improvement. The doctor added, however, that on the date of his statement, plaintiff was still complaining of pain in his neck. A postscript by the doctor, dated Jan. 17, 1945, says, ‘condition of this nature should be cured in a period of two or three months.’
“Plaintiff undoubtedly was considerably jolted and probably suffered some shock from the collision. He must have suffered considerable pain as a result of the contusion of the muscles, ligaments and nerves of the left shoulder. There is no proof, however, of any arthritis to the joints of this region, as claimed by him, or of any mental anguish aside from the pain and suffering attending his injury. The doctor’s certificate does not specify the duration of his treatment. Plaintiff says he went a number of times to the doctor who rubbed his neck and applied an electric pad on it; that for about two weeks he could hardly sleep at night; and that it pained him for about two weeks.
“Fixing pecuniary compensation for pain and suffering is always difficult and is, of necessity, addressed to the discretion of the court. We have concluded that, to award plaintiff the sum of $250.00 therefor, will adequately compensate him.
“Accordingly there is judgment in favor of plaintiff and against the defendants, in solido,' in the sum of $711.76, with legal interest thereon from judicial demand and all costs of this suit.”
Both plaintiff and defendants have filed exhaustive briefs citing authorities each believes to be applicable to the facts of the case. These briefs and authorities have been read with interest. To discuss them here would only lengthen this opinion without serving, só far as we can see, any useful purpose. Suffice it to say, the cases support the findings of the lower court.
The judgment appealed from is affirmed. Costs of both courts to be paid by defendants-appellants.